Susan H. Widner
Rosenfelt & Buffington, P.A.
1805 Carlisle, NE
Albuquerque, New Mexico  87110
State Bar No. 014883
505-266-3441
swidner@rbblaw.com
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| Benson Ben and Elsie Ben, individually; and on behalf of J.B., K.B., Z.B., minors; and as Personal Representatives of the Estates of R.B. and C.B., deceased, | ) ) ) ) ) | No. 04-1850 PCT PGR |
| Plaintiffs, | ) ) | |
| *vs.* | ) ) | **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY** |
| The United States of America, | ) ) | **JUDGMENT CONCERNING APPLICATION OF LAW OF THE** |
| Defendant. | ) ) ) | **PLACE** |

Many courts have addressed the issue of the application of the appropriate substantive law in FTCA cases, but they have taken the wrong approach.  Under a conflicts-of-law analysis as adopted by the State of Arizona, the substantive law of the Navajo Nation applies to the facts in this case.

The question of which law, the State of Arizona or the law of the Navajo Nation, applies is significant because Navajo Nation law sets forth specific elements of damages and Navajo Nation law does not recognize the seat belt defense asserted by Defendant.  For these reasons, the Plaintiffs respectfully request that the Court rule in their favor and hold that the laws of the Navajo Nation apply to this case.

1

**Statement of Undisputed Material Facts**

1.      The February 2, 2002, automobile crash that serves as the basis for this litigation occurred on Navajo Route 41 just south of milepost 10, within the geographical boundaries of the Navajo Nation. *See Exhibit 1, Arizona Traffic Accident Report No. 5-02-02969; see also Exhibit 2, Benson Ben Deposition, p. 22, lines 1-5.*

2.      Plaintiff Benson Ben is a member of the Navajo Nation born in Tuba City, within the geographical boundaries of the Navajo Nation. *See Exhibit 2, Benson Ben Deposition, p. 5, lines 15-16.*

3.      For his entire lifetime, Plaintiff Benson Ben has resided approximately one-half mile behind the Tonalea General Store, within the geographical boundaries of the Navajo Nation. *See Exhibit 2, Benson Ben Deposition, p. 8, lines 15-25 to p. 9, line 1.*

4.      Plaintiff Elsie Ben is a member of the Navajo Nation born in Tuba City within the geographical boundaries of the Navajo Nation. *See Exhibit 3, Elsie Ben Deposition, p. 9, lines 13-16.*

5.      In the approximately 12 years prior to the February 2, 2002 crash that serves as the basis of this litigation, and at the time of the crash, Plaintiffs Benson Ben and Elsie Ben lived together as husband and wife and raised their children while living within the geographical boundaries of the Navajo Nation. *See Exhibit 3, Elsie Ben Deposition, p. 9, lines 20-25.*

6.      At the time of the February 2, 2002 crash, Plaintiffs had five children.

7.      At the time of the crash, Plaintiffs Benson Ben and Elsie Ben, together with all five of their children, resided within the geographical boundaries of the Navajo Nation. *See Exhibit 2, Benson Ben Deposition, p. 5, lines 20-25 to p. 6, line 3.*

8.      Two of Plaintiffs Benson Ben and Elsie Ben's minor daughters passed away as a result of their injuries from the February 2, 2002, crash. *See Exh. 1.*

9.      After the February 2, 2002 crash, Plaintiffs Benson Ben and Elsie Ben and their remaining three surviving children continued to reside within the geographical boundaries of the Navajo Nation. *See Exhibit 2, Benson Ben Deposition, p. 5, lines 20-25 to p. 6, line 3.*

10.     Plaintiffs allege that the negligent acts of the United States relate to the United States' failure properly to maintain the right of way on Navajo Route 41 within the geographical boundaries of the Navajo Nation. *See Complaint (Court Docket #1) at paragraphs 4, 7, 11, 12, and 13.*

## LEGAL ANALYSIS AND AUTHORITY

**A.     Partial Summary Judgment is Appropriate on the Issue of Which Law Applies.**

A party may move for summary judgment that is "interlocutory in character." Fed. R. Civ. P. 56(c). Summary judgment is proper if there are no genuine questions of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Determining the proper substantive law to apply in an FTCA case is a question of law. Richards v. United States, 369 U.S. 1 (U.S. 1962). It is proper for this court to determine what substantive law applies to the specific facts presented in this FTCA case. Richards v. United States, 369 U.S. at 7-11.

**B.     Under Arizona's choice-of-law rules, Navajo Nation substantive law governs this case.**

Under the Federal Tort Claims Act ("FTCA") 28 U.S.C. §1346(b), the United States is liable for negligence "in the same manner and to the same extent as a private individual under like circumstances" "in accordance with the law of the place where the act or omission

occurred."  See 28 U.S.C. §2674 & 28 U.S.C. §1346(b).  Federal courts are required to apply the

whole law of the place where the act or omission occurred, including that jurisdiction's conflict-

of-laws rules. Richards v. United States, 369 U.S. 7-11(FTCA case); see also generally,

Katherine C. Pearson, DEPARTING FROM THE ROUTINE: Application of Indian Tribal Law

Under the Federal Tort Claims Act, 32 Ariz. St. L.J. 695, at 708-713 (2000); see also generally

Cohen's Handbook of Federal Indian Law, Section 7.06[2], p. 652-54, (2005 ed.).

Assuming *arguendo* that the language in the FTCA concerning the "place" means the

State of Arizona and not the Navajo Nation, the State of Arizona's choice-of-law analysis would

apply to determine whether Arizona or the Navajo Nation's substantive law governs the case.

Richards v. United States, 369 U.S. 1, at 7-11; see also generally Cohen's Handbook of Federal

Indian Law, Section 7.06[2], p. 652-54, (2005 ed.).

Application of modern choice-of-law principles should lead state and federal courts to

apply tribal law to disputes arising within Indian country. See Cohen's Handbook of Federal

Indian Law, Section 7.06[2] at p. 652 (citing to Brown v. Babbitt Ford, Inc., 571 P. 2d 689 (Ariz.

Ct. App. 1977)(for the proposition that "noting that except for choice-of-law clause in contract,

tribal law might apply to repossession of car on reservation"); citing also to "Warm Springs

Forest Prods. Indus. V. Employee Benefits Ins. Co., 703 P. 2d 1008, 1014 n. 8 (Or. Ct. App.

1985)(noting but for contractual choice-of-law provisions to the contrary, state court might have

applied tribal law to adjudicate dispute); *see also* Jones v. Meehan, 175 U.S. 1, 28-32 (U.S.

1899)(applying tribal inheritance rules to property held in fee simple by tribal member);

Wisconsin Potowatamies v. Houston, 393 F. Supp. 719 (W.D. Mich. 1973)(applying tribal law in

child custody case); In re Estate of Lynch, 377 P. 2d 199, 201 (Ariz. 1962)(admitting will to

probate in state court that had been proved and allowed in tribal court)").

"If an on-reservation accident results in injury to a tribal member, there is an especially strong argument for application of tribal law if tribal law imposes a higher regulatory standard or affords greater damages than state law."  See Cohen's Handbook of Federal Indian Law, Section 7.06[2] at p. 653.   State courts may well apply tribal law to vindicate a claim against a nonmember who caused injury to a tribal member within the reservation.  See id.

The question presented to this Federal District Court is this:

Under the State of Arizona's conflict-of-laws doctrine and precedent would an Arizona State Court apply the substantive law of the Navajo Nation to the specific facts presented in this case?

The answer is:

Yes, a Court of the State of Arizona would apply the laws of the Navajo Nation because the Navajo Nation has the "most significant relationship" with the parties and the Navajo Nation has the greatest interest in an FTCA case brought by Navajos for injuries they sustained as a result of negligence that occurred within the geographic boundaries of the Navajo Nation.

In deciding which conflict-of-laws analysis to apply, the State of Arizona has adopted the "most significant relationship" doctrine from the Restatement (Second) of Conflict of Laws (1971). See Garcia v. General Motors Corp. et al., 195 Ariz. 510, 990 P. 2d 1069 (Az. Ct. App. 1999); accord Schwartz v. Schwartz, 103 Ariz. 562, 565, 447 P. 2d 254, 257 (Ariz. 1968) overruled on other grounds, Fernandez v. Romo, 132 Ariz. 447, 646 P. 2d 878 (Ariz. 1982).

When the facts in this case are analyzed under Arizona's "most significant relationship" doctrine, the conclusion mandates application of the laws of Navajo Nation under the unique circumstances in this particular case.  See Garcia, 195 Ariz. at 517, 990 P. 2d at 1076.

First, the injury occurred on Navajo Route 41 within the geographical boundaries of the Navajo Nation. *See Exhibit 1, Arizona Traffic Accident Report No. 5-02-02969; see also Exhibit 2, Benson Ben Deposition, p. 22, lines 1-5.*

Second, the alleged negligent conduct of the United States occurred within the geographical boundaries of the Navajo Nation.  Plaintiffs allege that the negligent acts of the United States relate to the United States' failure properly to maintain the right of way on Navajo Route 41 within the geographical boundaries of the Navajo Nation. *See Complaint (Court Docket #1) at paragraphs 4, 7, 11, 12, and 13*. See also generally Walsh v. United States, 672 F. 2d 746 (9th Cir. 1982)(cattle owner stated a cause of action under the FTCA for United States' failure to maintain right of way by negligently permitting cattle guards to become damaged and filled and, thereby, allowing livestock to get on the right of way).  While Defendant denies negligence and proximate cause, it does not deny that the Plaintiffs complain of alleged negligence *within* the geographical boundaries of the Navajo Nation.

Third, all the Plaintiffs were at the time of the crash and those that survived the crash are Navajo people domiciled within the geographical boundaries of the Navajo Nation.  *See Exhibit 3, Elsie Ben Deposition, p. 9, lines, 13-16 & 20-25;  see also Exhibit 2, Benson Ben Deposition, p. 5, lines 15-16; p. 5, lines 20-25 to p. 6, line 3; p. 8, lines 15-25 to p. 9, line 1; p. 22, lines 1-5.* The Plaintiffs and their children are Navajo.  This is not a matter of forum shopping, but rather an analysis of whether in fairness the substantive laws of the Navajo Nation should apply under the unique facts in this case.  "Arizona courts traditionally have accorded great weight in the conflicts analysis to the domicile of the tort victim in a personal injury case."  Garcia, 195 Ariz. at 517, 990 P. 2d at 1077.

Finally, the place where the relationship between the Plaintiffs and the United States is centered is within the Navajo Nation as the relationship arises from the United States duty safely to maintain the right of way on Navajo Route 41 within the Navajo Nation for the safety of the Plaintiffs and those similarly situated.

The Navajo Nation's interest in applying Navajo law to negligence actions occurring within the geographic boundaries of the Navajo Nation is greater than the State of Arizona's interest in applying Arizona law within the Navajo Nation. See Garcia, 195 Ariz. at 517, 990 P. 2d at 1077.  The Navajo Nation's interest in applying Navajo Nation law to protect Navajo people within the geographical boundaries of the Navajo Nation significantly outweighs the State of Arizona's interests of applying Arizona law within the geographical boundaries of the Navajo Nation.   See Garcia, 195 Ariz. at 517, 990 P. 2d at 1077.

The Navajo Nation has a great interest in an FTCA case brought by Navajos for injuries sustained within the geographic boundaries of the Navajo Nation.  The Navajo Nation's interest in protecting Navajos from negligence within the geographic boundaries of the Navajo Nation is greater than the State of Arizona's interest in so doing.

This Court should also consider that the Supreme Court of Arizona, In Banc, has recognized the separate, sovereign jurisdiction of the Navajo Nation and has treated the Navajo Nation like a state. See Tracy v. Superior Court of Maricopa County and the Navajo Nation Tribe, 168 Ariz. 23, 810 P. 2d 1030 (Az. 1991)(In Banc.)(affirming the district court finding that the Navajo Nation is a "state" or "territory" within the meaning of the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings.)

Arizona recognizes that "[t]he district courts of the Navajo Nation are comparable to those of other jurisdictions as they keep a written record of the proceedings, have provisions of appeal to the Navajo Supreme Court, and have the inherent powers of all such courts, i.e., the power to fine and imprison for contempt." Tracy 168 Ariz. at 28, 810 P. 2d at 1035.

The Arizona Supreme Court further recognizes:

The Navajo Nation has developed an extensive tribal code that is bound and supplemented.  Procedural rules of [the Navajo Nation] court are patterned after

federal rules.  Decisions of the Navajo Supreme Court are published in the Navajo
Reporter, and the Navajo Courts use these as precedent.

Tracy, 168 Ariz. at 30, 810 P. 2d at 1037; (citing to *Tso, The Process of Decision-Making in*

*Tribal Courts, 31 Ariz. L. Rev. 225, 227-28 (1989); Tso, The Tribal Court Survives in America,*

*25 JUDGES' J. 22 (Vol. 2, Spring 1986)).*

As to Indian tribes generally and the Navajo Nation specifically, Arizona recognizes that

Indian tribes exercise powers of self-government as an aspect of their inherent sovereignty and,

in this respect, the Navajo Nation exercises its judicial power as would a state. Tracy 168 Ariz. at

31, 810 P. 2d at 1038.  "The tribes are similar to states in terms of their judicial jurisdiction and

power of self-government over matters occurring within their territorial boundaries." Tracy 168

Ariz. at 31, 810 P. 2d at 1038.

> The political status of Indian tribes has been analogized to that of other quasi-
> sovereign entities under the protection of the United States, such as Puerco Rico
> and the Virgin Islands. . . . . In any case, Indian tribes, like Puerco Rico and the
> Virgin Islands, have often been regarded as territories for purposes of various
> statutory enactments.

Tracy 168 Ariz. at 32, 810 P. 2d at 1039.

In Puerto Rico, the law of Puerto Rico is applied in FTCA cases; Soto v. United States,

11 F.3d 15, 16 (1st Cir. 1993); Borrego v. United States, 790 F.2d 5, 6 (1st Cir. 1986); in Guam,

the law of Guam is applied in FTCA cases, Taber v. Maine, 67 F.3d 1029, 1033 (2nd Cir. 1995);

in the U.S. Virgin Islands, the law of the Virgin Islands is applied in FTCA cases, Sea Air

Shuttle Corp. v. United States, 112 F.3d 532, 537 (1st Cir. 1997).  The law of the Navajo Nation

should be applied in an FTCA case brought by Navajo people living within and injured by

negligence occurring within the geographical boundaries of the Navajo Nation.

The State of Arizona recognizes that the Navajo Nation is more like the territories listed

above and would, therefore, apply the substantive law of the Navajo Nation in an FTCA case

arising within the geographic boundaries of the Navajo Nation and brought by Navajos. The opinion of the Ninth Circuit in <u>Brock v. United States</u>, 601 F. 2d 976 (9th Cir. 1979) is factually distinguishable and inapplicable to the facts in this case.  The opinion in <u>Bryant v. United States</u>, 147 F. Supp. 2d 953 (D. Az. 2000) is inapplicable because it concerned application of New Mexico law, did not address Arizona's conflict-of-law precedent, and because Arizona and New Mexico's conflict-of-law precedent significantly differ with New Mexico adopting the doctrine of lex loci delicti, and Arizona rejecting the doctrine of lex loci delicti and instead adopting the most significant relationship test set forth in the Restatement (Second) of Conflict of Laws (1971), <u>See Garcia v. General Motors Corp., et al.</u>, 195 Ariz. 510, 990 P. 2d 1069 (Az. Ct. App. 1999); <u>accord Schwartz v. Schwartz</u>, 103 Ariz. 562, 565, 447 P. 2d 254, 257 (Ariz. 1968) <u>overruled on other grounds, Fernandez v. Romo</u>, 132 Ariz. 447, 646 P. 2d 878 (Ariz. 1982).

**C.      The Navajo Nation has well established common law concerning torts, personal injury and wrongful death.**

The developed law of the Navajo Nation recognizes common law causes of action for personal injury and wrongful death arising out of negligence and the application of pure comparative fault. <u>See Benally v. Navajo Nation</u>, 1 Nav. T.R. 168 (W.R. Dist. Ct. 1986); <u>Tsinahnajinnie v. John</u>, SC-CV-80-98, at page 5 (Navajo Supreme Court 2001);and, <u>Cadman v. Hubbard</u>, 1 Nav. T.R. 177 (C.P. Dist. Ct. 1986).

The Navajo Nation judiciary has developed Navajo common law for the wrongful death of Navajo children within the Navajo Nation and the appropriate measure of damages for the tragic loss of Navajo children. <u>See Benally v. Navajo Nation</u> 1 Nav. T.R. at pages 168-170.  "To be sure, money cannot replace the life of a child who dies from an accident[,]" but compensation for the loss suffered must be had to allow the persons in sorrow get better, feel better, regain strength, and be able to go forth again in this life. <u>See Benally v. Navajo Nation</u> 1 Nav. T.R. at

page 170.

Under Navajo Nation law, See Benally v. Navajo Nation 1 Nav. T.R. at page 170, full and fair compensation for the tragic loss of one's children includes:

(1) special damages, such as funeral and burial expenses, and medical expenses incurred;

(2) general damages for the negligent act of defendant, including (a) the sorrow, mental anguish, pain and suffering of the plaintiffs; (b) loss of affection, love and companionship of the decedents;

(3) damages for the pain and suffering of the deceased minors, between the time of their injury and death; and,

(4) damages for the monetary worth of the lives of the deceased minors, including loss of earnings and financial support. *Bryant v. Bryant,* 3 Nav. R. 194 (Shiprock D. Ct. 1981), allowed the jury to determine the value of a child's life based upon their own understanding, taking into account the Navajo culture, the economy of the reservation, the usual ages of marriage, and many other things, to value a life in terms of the loss caused others.

See Benally v. Navajo Nation 1 Nav. T.R. at page 170.  As one can see from the Navajo Nation opinions, the Navajo Nation judicial system produces its own common law.  Under the law of the Navajo Nation there is no codified or common law seat belt defense.  Plaintiffs respectfully request that this Court determine, under a choice-of-law analysis, that the law of the Navajo Nation applies so that damages are determined under Navajo Nation Law and so that the Defendant is prohibited from raising the seat belt defense.

**D.**     **Alternatively, this Court may decide to apply Navajo Nation law because the "place" of alleged negligence is the Navajo Nation and because a private individual in like circumstances could be held liable under Navajo Nation law.**

In Cheromiah v. United States, 55 F. Supp. 2d 1295 (D.N.M. 1999), the District Court (The Honorable Martha Vasquez) held specifically that the "law of the place" was the Acoma tribal law.  In the Cheromiah case, Judge Vasquez relied in part upon the language from the United States Supreme Court decision in Hess v. United States, which stated that "it is clear...that the term 'place' in the Federal Tort Claims Act means the political entity . . . whose laws shall govern the action against the United States 'in the same manner and to the same extent as a private individual under like circumstances.'"  Hess v. United States, 361 U.S. 314, 319, 80 S.Ct. 341, 345 (U.S. 1960).

Relying in part on the Hess decision, Judge Vasquez found in Cheromiah that the plain meaning of the statute controlled and if the FTCA had said that liability should be determined in accordance with the law of the **state** where the wrong occurred then that would change the situation, and if Congress had intended such a result it could easily have used different language. The Judge in Cheromiah also analyzed the facts presented under the elements set forth in Strate v. A-1 Contractors, 520 U.S. 438 (U.S. 1997) and Montana v United States, 450 U.S. 544 (U.S. 1981), to conclude that the defendant in Cheromiah met both Montana exceptions in that it entered a consensual relationship with the tribe and engaged in activity that directly affected the tribe's or tribal members' health or welfare.

Under the language used and the plain meaning rule, the law of the place embraces an Indian reservation such as the Navajo Nation, which has a well-developed legal and tort system and which has been functioning as a government for generations.  Granted, the Cheromiah decision is the only decision known to date to hold that "the law of the place" could include an

11

Indian tribe if Indian land was the place of alleged negligence and the District Court for the District of New Mexico has held to the contrary in another case.  However, the <u>Cheromiah</u> reasoning should be considered by this Court in analyzing the applicable law under the specific facts presented in this case.  In addition to a plain meaning application, the facts here also satisfy the <u>Montana</u> elements.  Under Hornbook property law concepts, the United States entered into a consensual relationship whereby it undertook the duties properly to maintain the right-of-way easement on Navajo Route 41 within the geographical boundaries of the Navajo Nation.  The United States' conduct directly affected the tribe's or tribal members' health or welfare.

The Federal Tort Claims Act, at 28 U.S.C. §1346(b)(1) provides that the United States district courts:

> shall have exclusive jurisdiction for civil actions against the United States on claims against the United States, for money damages,  . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Pursuant to 28 U.S.C. §2674:

> The United States shall be liable, respecting . . . tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

It has been said by the Supreme Court of the United States:

> In the Tort Claims Act Congress has expressly stated that the Government's liability is to be determined by the application of a particular law, the law of the place where the act or omission occurred, and we must, of course, start with the assumption that the legislative purpose is expressed by the ordinary meaning of the words used. We believe that it would be difficult to conceive of any more precise language Congress could have used to command application of the law of the place where the negligence occurred than the words it did employ in the Tort Claims Act.

<u>Richards v. United States</u>, 369 U.S. 1, at 9, 82 S.Ct. 585, at 591, (U.S.1962).

Alternatively, if the Court does not apply Navajo Nation law under a conflict-of-law analysis, the Court may apply Navajo Nation law under the plain meaning of the words used in the FTCA or under an analysis that recognizes that a private individual in like circumstances would be liable to the Plaintiffs under Navajo Nation law.  Therefore, the law of the Navajo Nation should be applied in this case.

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court rule in their favor and hold that the law of the Navajo Nation apply to this case for all purposes including but not limited to setting forth the measure of Plaintiffs' damages and prohibiting Defendant from raising the seat belt defense.

ROSENFELT & BUFFINGTON, P.A.


/s Susan H. Widner
Susan H. Widner
1805 Carlisle NE
Albuquerque, NM 87110
(505) 266-3441
*Attorneys for Plaintiffs*

## NOTICE OF SERVICE

I certify that on November 2, 2006, I electronically transmitted this document to the Clerk's office using ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF Registrant:

J. Cole Hernandez
Assistant U.S. Attorney
405 W. Congress Street, Suite 4800
Tucson, AZ 85701-5040
cole.hernandez@usdoj.gov

/s *Susan H. Widner*
Susan H. Widner
ROSENFELT & BUFFINGTON, P.A.