**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Benson Ben, et al., | ) | CV 04-1850-PCT-PGR |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| The United States of America, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Currently pending before the Court is the Plaintiff's Motion for Partial Summary Judgment Concerning Application of Law of the Place (Doc. 75) and the Defendant's Motion for Summary Judgment (Doc. 82).  The Court now issues its ruling on both motions.

**I.      FACTUAL BACKGROUND**

On February 2, 2002, the Ben family was involved in a single vehicle roll over accident on Navajo Route 41 (NR 41) in which two of their five children were ejected and tragically killed.  At the time of the accident, Benson Ben was driving a 1999 Chevrolet Cavalier.  The Ben's youngest child sat in the front seat with the father and mother, and the other four children were seated in the back.

While traveling on NR 41 at approximately 7:45 p.m.,  just outside of Pinon, Arizona, Mr. Ben turned on his high beams and allegedly saw a black horse in the middle of NR 41. According to Mr. Ben, the horse was standing perpendicular to the line dividing the north and southbound lanes.  Mr. Ben made a hard right to avoid the horse and then made a hard

1  left to get back on the highway.  At that point, he lost control of the vehicle and it skidded
2  across NR 41 onto the dirt shoulder on the west side of the highway and rolled ejecting and
3  killing two of the Benson's minor children, R.B. and C.B..

4      The Plaintiffs thereafter filed a wrongful death action under the Federal Tort Claims
5  Act ("FTCA"), 28 U.S.C. § 1346(b), alleging that the United States was responsible for the
6  accident due to their failure to properly maintain the right of way on NR 41 within the
7  geographical boundaries of the Navajo Nation.  The Defendant denies all allegations of
8  negligence and has filed a Motion for Summary Judgment.  The Plaintiff has filed a Motion
9  for Partial Summary Judgment Concerning the Application of the Law of the Place urging
10  this Court to apply Navajo Tribal Law to the wrongful death action instead of Arizona State
11  Law.  The Court now issues its ruling on both motions.

12  **II.   LEGAL STANDARD AND ANALYSIS**

13      The standard for summary judgment is set forth in Rule 56(c) of the Federal Rules of
14  Civil Procedure.  Under this rule, summary judgment is properly granted when, after viewing
15  the evidence in the light most favorable to the non-moving party, no genuine issues of
16  material fact remain for trial. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-
17  23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

18      The moving party bears the burden of demonstrating that it is entitled to summary
19  judgment. Mur-ray Mgmt. Corp. v. Founders Title Co., 819 P.2d 1003, 1005 (Ariz. Ct. App.
20  1991).  If the moving party makes a prima facie case showing that no genuine issue of
21  material fact exists, the burden shifts to the opposing party to produce sufficient competent
22  evidence to show that a triable issue of fact does remain.  Ancell v. United Station Assocs.,
23  Inc., 803 P.2d 450, 452 (Ariz. Ct. App. 1990).  The Court must regard as true the non-moving
24  party's evidence, if it is supported by affidavits or other evidentiary material.  Celotex, 477
25  U.S. at 324. However, the non-moving party may not merely rest on its pleadings, it must
26  produce some significant probative evidence tending to contradict the moving party's
27  allegations and thereby creating a material question of fact.  Anderson v.  Liberty Lobby,

28

1   Inc., 477 U.S. 242, 256-57(1986)(holding that the plaintiff must present affirmative evidence

2   in order to defeat a properly supported motion for summary judgment); First Nat'l Bank of

3   Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968).

4         **A.**    **Plaintiff's Motion for Partial Summary Judgment Concerning Application of Law of the Place.**

5
6   In their motion for partial summary judgment, the Plaintiffs assert that this Court

7   should apply Navajo Tribal law in determining the United States' liability under the FTCA.

8   In response, the government maintains that Arizona state law, not Navajo law, governs its

9   liability under the FTCA in this case pursuant to applicable Ninth Circuit precedent.  The

10  Court agrees with the Defendant.

11  Under the FTCA, the United States has waived its sovereign immunity to the

12  following extent:

13       for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or

14  employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance

15  with the law of the place where the act or omission occurred.

16  28 U.S.C. § 1346(b)(1).  Since the enactment of this provision in 1948, courts have operated

17  under the rule that the "law of the place" refers to the law of the state where the negligent act

18  or omission occurred. See, e.g., F.D.I.C. v. Meyer, 510 U.S. 471, 478 (1994) ("[W]e have

19  consistently held that § 1346(b)'s reference to 'law of the place' means law of the state–the

20  source of substantive liability under the FTCA."); Miree DeKalb County, 433 U.S. 25, 29 n.4

21  (1977); Rayonier Inc. v. United States, 352 U.S. 315, 318-19 (1957); Krutchen v. United

22  States, 653 F.2d 196, 201 (5th Cir. 1981); United States v. English, 521 F.2d 63, 65 (9th Cir.

23  1975).  Courts have consistently reached this conclusion even when the negligent act or

24  omission occurred on Indian land located within a state.  See LaFramboise v. Leavitt, 439

25  F.3d 792 (8th Cir. 2006);  Red Lake Band of Chippewa Indians v. United States, 936 F.2d

26  1320 (D.C. Cir. 1991); Seyler v. United States, 832 F.2d 120 (9th Cir. 1987); Bryant v. United

27  States, 565 F.2d 650 (10th Cir. 1977).  Consistent with this traditional rule regarding the

28                      – 3 –

1   meaning of the "law of the place," the parties agreed in the Joint Case Management Report

2   (Doc. 8), filed with the Court on January 24, 2005, that Arizona substantive law applies in

3   determining the United State's liability.  However, the Plaintiffs now assert that Navajo law

4   applies because the alleged negligent acts or omissions occurred within the boundaries of the

5   Navajo Nation.

6        In arguing that Navajo law should apply, the Plaintiffs contend that the many courts

7   that have found the "law of the place" to mean the law of the state, "have taken the wrong

8   approach."  The question the Plaintiffs present to this Court is whether under the state of

9   Arizona's conflict-of-laws doctrine and precedent would an Arizona State Court apply the

10  substantive law of the Navajo Nation to the specific facts presented in this case.  The

11  Plaintiffs argue that a court in this state would apply the laws of the Navajo Nation because

12  the Navajo Nation has the "most significant relationship" with the parties and the Navajo

13  Nation has the greatest interest in an FTCA case brought by the Navajos for injuries they

14  sustained as a result of the negligence that occurred within the geographic boundaries of the

15  Navajo Nation.

16       Although the Plaintiffs devote a large portion of their brief to arguments concerning

17  the "most significant relationship" doctrine adopted by Arizona from the Restatement

18  (Second) of Conflict of Laws, the Court finds this portion of the analysis unnecessary.  In

19  maintaining that  the Court should consider the law of the place to be the law of the Navajo

20  Nation, the Plaintiffs fail to provide this Court with any controlling legal authority to support

21  this request.  As noted by the Defendant, the district courts that have addressed the issue of

22  whether to apply state or tribal law in an FTCA case have consistently held that when the

23  alleged act or omission occurred on a tribal reservation, the "law of the place" is the law of

24  the state where the alleged negligence occurred, not the law of the tribal reservation. See Fed.

25  Express Corp. v. United States, 228 F. Supp. 2d 167, 1269 (D.N.M. 1999); Bryant v. United

26  States, 147 F. Supp. 2d 953, 957 (D. Ariz. 2000); Louis v. United States, 54 F. Supp. 2d

27  1207, 1210 (D.N.M. 1999); Azure v. United States, CV-90-68-gf-PGH, slip op. at 9-10 (D.

28                                          - 4 -

Mont. May 8, 1991).  Plaintiffs admit that <u>Cheromiah v. United States</u>, 55 F. Supp. 2d 953 (D.N.M. 1999), is the only decision to hold that under the FTCA the law of the place is the law of the tribe on whose reservation the incident occurred.[1]  The Plaintiffs urge this Court to follow the <u>Cheromiah</u> court's  ruling and reasoning.  However, based on the analysis contained below, the Court declines to do so.

First and foremost, the <u>Cheromiah</u> ruling has been expressly rejected by the District of Arizona in a 2000 case, <u>Bryant v. United States</u>, 147 F. Supp. 2d 953 (D. Ariz. 2000). Furthermore, this Court does not find the reasoning in <u>Cheromiah</u> persuasive.  Like the ruling in <u>Bryant</u>, this Court will follow the line of cases finding that when a negligent act or omission occurred on a federal enclave within a state, that state's law and not federal law applies.  <u>See</u>, <u>e.g.</u>, <u>Shankle v. United States</u>, 796 F.2d 742 (5th Cir. 1986 (acts occurred on federal military reservation); <u>Lutz v. United States</u>, 685 F.2d 1178, 1184 (9th Cir. 1982)(acts occurred on air force base); <u>see also</u>, <u>Brock v. United States</u>, 601 F.2d 976 (9th Cir. 1979) (recognizing and relying on this line of cases).  Similarly,  because the acts here occurred on tribal land located within the State of Arizona, the substantive law of Arizona will apply. Secondly, the principal reason offered by the district court in <u>Cheromiah</u> in support of its conclusion regarding the law of the place was that a private person in like circumstances would have been subject to jurisdiction of the Acoma Tribal Court.  55 F. Supp. 2d at 1308. Based on this finding, the court concluded that the Acoma Tribe was the political entity

---

[1]In <u>Cheromiah,</u> the plaintiffs' son died due to complications arising from a bacterial infection. 55 F. Supp. 2d at 1295.  The plaintiffs brought a FTCA claim against the United States based on the alleged negligence of doctors at an IHS hospital in failing to diagnose and treat the infection.  <u>Id.</u> at 1297.  The hospital was located on Acoma Tribal land within the state of New Mexico and was operated by IHS pursuant to a lease agreement with the Acoma Tribe.  <u>Id.</u>  The plaintiffs sought a ruling from the district court that the New Mexico Medical Malpractice Cap ("NMMMC") did not protect the United States because the substantive law of the Acoma tribe applied and not that of the state of New Mexico.  <u>Id.</u> at 1301.    The plaintiffs argued that because the alleged negligence occurred within the boundaries of the Acoma Tribe, its law was the law of the place where the negligent acts occurred.  <u>Id.</u> at 1301-02.  Finding the plaintiffs' logic compelling, the district ruled that the law of the Acoma Tribe was the applicable law under 28 U.S.C. § 1346(b) and that, therefore, the NMMMC did not apply.  <u>Id.</u> at 1308.

whose laws controlled the place where the alleged negligence occurred.  <u>Id.</u>  However, this reasoning has been expressly rejected by the Ninth Circuit in <u>Brock</u>, albeit in a slightly different factual setting.

The Plaintiffs in <u>Brock</u> sued the United States under the FTCA for an accident that occurred during the completion of work on a dam in the Columbia river.  601 F.2d at 977.  The issue before the Ninth Circuit was whether Washington or Oregon law applied as the "law of the place" under the FTCA.  <u>Id.</u> at 978.  The Plaintiffs argued that the law of the place should mean the law of the state that has jurisdiction over the place where the alleged act occurred.  <u>Id.</u>  The United States, in opposition, argued that the phrase meant the law of the state in which the negligence occurred.  <u>Id.</u>  The Ninth Circuit in a well reasoned opinion, adopted the government's interpretation.  <u>Id.</u> at 978-79.  In examining the legislative history of the FTCA, the <u>Brock</u> court found that Congress intended the law of the place to mean the law of the state where the negligence occurred.  <u>Id.</u> at 978.  The court also reasoned that Supreme Court precedent supported a territorial, as opposed to a jurisdictional, interpretation of the law of the place.  <u>Id.</u> at 978-79.  This Court concludes that the Ninth Circuit's reasoning in <u>Brock</u> weighs against use of Navajo law in this case.  Accordingly, this Court holds that Arizona, and not Navajo law, is the law of the place in this matter and will govern the United States' liability under the FTCA.

## B.    Defendant's Motion for Summary Judgment

In their Complaint, Plaintiffs allege that the Bureau of Indian Affairs (BIA) and its employees exercised control over NR 41 and had a duty to maintain the roadway, fencing and gates in a safe condition for the traveling public, including the Plaintiffs.  Specifically, the Plaintiffs contend that the Defendant had a duty to a maintain the highway right-of-way fencing and cattle guards so as to preclude the horse from entering NR 41 and presenting a serious hazard to motorists.  According to the Plaintiffs, at all material times before the fatal crash of February 2, 2002, the Defendant knew or should have known that the fencing and cattle guards along NR 41 were seriously deficient and did not prevent large animals from

entering the right-of-way.  The Plaintiffs assert that the Defendant's failure to adhere to its responsibilities and maintain the right-of-way in a reasonably safe condition was negligence and the proximate cause of the crash.  The Defendant, in moving for summary judgment, argues to this Court that the Plaintiffs cannot establish negligence; therefore, the case should be dismissed with prejudice.

Under Arizona law, to establish a claim for negligence, a plaintiff must prove the existence of a duty of the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach.  Wisener v. State of Arizona, 598 P.2d 511, 512 (Ariz. 1979);  Boyle v. City of Phoenix, 563 P.2d 905, 906 (Ariz. 1977) .  The burden of proving the negligence rests upon the plaintiff, and it is not incumbent upon the Defendant to prove the absence thereof.  Berne v. Greyhound Parks of Arizona, 448 P.2d 388, 389 (Ariz. 1968).

### 1.    Duty

As noted by the Defendant, in February of 2002, the BIA's responsibility to maintain the roads such as NR 41 was based on 25 C.F.R. § 170.3, which stated in part: "Subject to the availability of funds, the Commissioner shall maintain, or cause to be maintained, those approved roads on the Federal-Aid Indian Road system."  Furthermore, the regulations defined maintenance as the act of preserving the entire roadway, including surface, shoulders, roadsides, structures, and the necessary traffic control devices as nearly as possible in the as built condition to provide services for the satisfactory and safe use of such roads.  25 C.F.R. § 170.2(h).  In addition, under Arizona law, the standard of care imposed on an owner of roadways, such as the BIA in this instance, is that of an ordinary prudent person.  Wisener, 598 P.2d at 513.  As stated in Phoenix v. Clem, the owner is bound to keep the streets reasonably safe for travel, but it is not an insurer for those who travel thereon.  237 P.2d 168 (Ariz. 1925).  For there to be liability for failure to repair a defect, the owner must have received actual or constructive notice of the defect.  Wisener, 598 P.2d at 513.  For the owner to have actual knowledge of a defect, the defect must have existed a sufficient length of time to imply notice before it can be guilty of actionable negligence.  Clem, 237 P.2d at 168.

1    Despite Defendant's argument that the Plaintiff is unable to establish that the United

2    States had a duty to maintain the fences and cattle guards "so as to preclude livestock from

3    entering the highway where they would constitute a serious hazard to motorists at night," the

4    Court disagrees.  The Defendant, as a holder of the right-of-way easement on NR 41, owed

5    a common law duty to keep the highway  reasonably safe for travel.  See, e.g., Wisener, 598

6    P.2d at 513.  As such, the Court will advance to the next step in the analysis: whether the

7    Plaintiff can establish a breach of that duty.

8                          **2.      Breach**

9    In order to establish a breach of the Defendant's duty to maintain the roads,

10   specifically the fences and cattle guards, the Plaintiffs must point to specific acts or

11   omissions of the Defendant that caused their damages.  Carrow Co. v. Lusby, 804 P.2d 747,

12   754 (Ariz. 1991).

13   The Plaintiffs offer the following arguments and evidence in support of their

14   contention that the Defendant breached its duty to keep the road reasonably safe for travel.

15   First, the Plaintiffs maintain that the Defendant had actual or constructive notice of defects

16   in the fencing and cattle guards along NR 41.  In support of this claim, the Plaintiffs proffer

17   that by Defendant's own admission, people sometimes cut the fencing and that such action

18   would result in opening the right-of-way.  Second, sand or dirt could build up against the

19   fencing and, if high enough, livestock may jump over the fencing and enter the road.  Third,

20   cattle-guards adjoining the right of way can fill up in a very short time.  Fourth, people use

21   the gates along NR 41 to move cattle, and at times, fail to adequately close those gates

22   thereby allowing livestock to enter the right-of-way.

23   In further support of their argument that the Defendant breached its duty, the Plaintiffs

24   point the Court to a complaint lodged in July of 1999 where a person reported that her

25   livestock was shot within the right-of-way fence of NR 41 near mile markers three and four.

26   One month later, in August of 1999, another individual notified the BIA that the condition

27   of fences and cattle guards on NR 41 was problematic, specifically noting that the fencing

28

was loose and dangling and the cattle-guard was filled with dirt.  This person further complained that the BIA failed to reasonably respond to the problems and did not address the serious concerns she raised. The Plaintiffs admit that the complaints were lodged years before the February 2, 2002 accident and six to seven miles away from the specific crash site; however, the Plaintiffs argue that approximately 21 months after the accident, there was evidence of deficient management along NR 41, including a fence post down, a livestock warning sign down, sand to the top of the fence, a filled in cattle guard, an open gate, a portion fo the fence down, three cows within the right-of-way, and two dead horses between the right-of-way fence and the road.  Although Plaintiffs expert visited the site years after the fatal accident, the Plaintiffs contend that his examination still revealed extensive evidence of animals having been on the highway.  For example, he located multiple bones from various animals, randomly scattered hoof-prints as well as horse manure.

Based on the foregoing evidence, the Plaintiffs argue that a fact finder could conclude that the Defendant failed to act as a reasonable person would in maintaining the fencing and cattle guards along NR 41.  The Plaintiffs remark that when considering the apparently sporadic maintenance, inadequate records concerning exact locations of maintenance activities, complaints about dead animals in the right-of-way, the condition of the fencing and the cattle guards along NR 41 at locations other than the crash site, the known cutting of the fencing, leaving open of gates, piling of dirt along the fencing allowing access over the fence, and the filling of the cattle guards quickly, the Plaintiffs claims should survive summary judgment.

The Defendant, however, asserts that there is absolutely no evidence that the United States had actual notice that a horse was on the road the evening of the accident nor is there evidence establishing that a horse was on the road a sufficient length of time to imply notice. Moreover, the Defendant urges the Court to acknowledge that there is no evidence in this case that the United States had actual knowledge of any hole or defect in any fence or cattle guard along the roadway at or around the time of the accident.  According to the Defendant,

1   the evidence, at best, establishes that the United States was aware that holes or other defects

2   in fences and cattle guards occasionally occur.  That evidence, however, is insufficient to

3   establish liability.

4          There is no evidence in the instant case regarding the condition of the fences or cattle

5   guards near the time of the accident.  The only complaint about the condition of the fencing

6   and cattle guards on NR 41 was received on August 3, 1999, 30 months prior to the accident.

7   The photos of the fencing and cattle guards were taken in November of 2003 approximately

8   21 months after the incident.  The observations presented to the Court by the Plaintiffs' expert

9   were also made years after the accident.  Conversely, during the 24 month period preceding

10  the accident, the Defendant shows that it repaired and/or checked on fencing conditions on

11  20 occasions and the cattle guards were cleaned out on five occasions. Additionally, there

12  is no evidence in this case of a prior accident involving livestock or horses in the roadway

13  in this area.   Even when drawing all reasonable inferences in the Plaintiffs favor, the

14  negligence claim cannot survive summary judgment.

15                    **3.    Causation**

16         Even if this Court could find that an issue of material fact remained as to whether the

17  Defendant breached its common law duty, the Plaintiffs also fail to establish proximate

18  cause.  A plaintiff proves proximate cause by demonstrating a natural and continuous

19  sequence of events stemming from the defendant's act or omission, unbroken by any efficient

20  intervening cause, that produces the injury, in whole or in part, and without which, the injury

21  would not have occurred.  Barrett v. Harris, 86 P.2d 945, 958 (Ariz. Ct. App. 2004).  The

22  only evidence in this case as to whether there was a horse on the roadway came from the

23  Plaintiffs themselves.  The testimony of John Yellowhair, who was approximately 75-100

24  feet away traveling toward the Plaintiffs at the time of the accident, did not see a horse on

25  the road on February 2, 2002.  He only saw the vehicle swerve off the road and roll over.

26  He testified that he did see a horse the day after the accident, but it was one half mile

27  northwest of the accident site.  Neither the Plaintiffs nor Mr. Yellowhair knew where the

28

1   horse came from, where the horse went, or who it belonged to.  The opinion offered by the

2   Plaintiffs' expert as to how the horse appeared on the roadway is nothing more than

3   speculation.  As pointed out by the Defendant, one could speculate as to a variety of other

4   scenarios where the United States was entirely uninvolved.  In this case, the evidence viewed

5   in the light most favorable to the Plaintiffs does not indicate that actual notice of a dangerous

6   condition was given nor do the facts support a conclusion of constructive notice.

7       Based on the forgoing analysis, this Court concludes that summary judgment in the

8   Defendant's favor is warranted on all Plaintiffs' claims in this case since the Plaintiffs have

9   failed to show that a genuine issue of material fact remains as to whether the Defendant was

10  negligent.  As such, the Court finds it unnecessary to address the arguments remaining in the

11  Defendant's motion.  Therefore,

12      IT IS ORDERED that the Plaintiffs' Motion for Partial Summary Judgment

13  Concerning Application of Law of the Place (Doc. 75) is DENIED.

14      IT IS FURTHER ORDERED that the Defendant's Motion for Summary Judgment

15  (Doc. 82) is GRANTED.  The Clerk of Court is ordered to enter judgment accordingly.

16      DATED this 16th  day of May, 2007.

17

18                                          Paul G. Rosenblatt
19                                          United States District Judge

20

21

22

23

24

25

26

27

28